UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CONTEC, LLC

                Plaintiff,

-against-                            1:18-CV-1172 (LEK/DJS)

COMMUNICATIONS TEST DESIGN, INC.,

                Defendant.

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Contec, LLC filed this action for patent infringement against Defendant Communications Test Design, Inc. ("CTDI") on September 27, 2018. Dkt. No. 1 ("Complaint"). On October 26, 2018, CTDI filed a motion to dismiss, stay, or transfer based on the first-filed rule and the fact that CTDI had filed a declaratory judgment action against Contec in the Eastern District of Pennsylvania (the "Pennsylvania Action") six days before this Complaint on September 21, 2018. Dkt. Nos. 17 ("Motion"); 17-4 ("Memorandum in Support"). Contec opposed the Motion, Dkt. No. 35 ("Response"), and CTDI filed a reply, Dkt. No. 39 ("Reply"). Contec later filed a letter brief notifying the Court that the Pennsylvania Action had been dismissed. Dkt. No. 41 ("Letter Brief").

For the reasons that follow, the Motion is denied.

## II. BACKGROUND

### A. General Background

Contec is a limited liability company with its principal place of business in Schenectady, New York. Compl. ¶ 3. It specializes in "repair, test, and reverse logistics for electronics hardware." Compl. ¶ 9. Contec has been awarded many patents, including two at issue in this

case: the 732 Patent for an "Arrangement and Method for Managing Testing and Repair of Set-Top Boxes" and the 071 Patent for a "Multimedia Device Test System." Compl. ¶¶ 10–12. CTDI, a corporation with a principal place of business in West Chester, Pennsylvania and a "regular and established place of business" in Glenville, New York, Compl. ¶¶ 4–5, is a "full service, global engineering, repair and logistics company, providing solutions and services to the communications industry." Dkt. 17-3 ("Montone Declaration") ¶ 7.[1]

CTDI uses "Gen3" and "Gen5" systems to test set-top boxes and multimedia devices. Compl. ¶ 13. Contec claims that the Gen3 system infringes on Contec's 732 Patent and the Gen5 system infringes on both Contec's 732 Patent and 071 Patent. Compl. ¶¶ 16–17. Contec also claims that CTDI's testing systems infringe on one or more additional Contec patents. Id. ¶ 18.

Contec made CTDI aware of the alleged infringement in a September 6, 2017 correspondence. Id. ¶ 14. Since then, Contec's counsel has "exchanged numerous emails and letters and participated in face-to-face and telephone conferences" with CTDI's counsel, but the "information Contec has received, however, has been limited and selective, and Contec has reason to believe that certain information has been either incorrect or incomplete." Id. ¶ 20.

**B. The Pennsylvania Action**

On September 21, 2018, six days before Contec filed this action, CTDI filed the Pennsylvania Action, seeking a declaratory judgment that the Gen3 and Gen5 systems did not infringe on the Contec's patents. CTDI explains that the parties had been in communication for over a year and CTDI "needed to achieve some final legal resolution." Montone Decl. ¶ 16.

---

[1] "[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire, by affidavits or otherwise, into the facts as they exist." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 401 (2d Cir. 2003) (quoting Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)).

Contec takes issue with CTDI's explanation for the necessity of the Pennsylvania Action. Contec claims that on September 12, 2018, Contec sent CTDI a letter explaining that that the information CTDI had "reluctantly provided" had been "too selective" and that:

> We attach hereto a draft Complaint for Patent Infringement that includes preliminary and exemplary claim charts setting forth the grounds for Contec's claims. Please confirm by the close of business on September 19, 2018, that CTDI is willing to discuss potential terms for a patent license agreement and propose specific times and dates before September 28, 2018, to have those discussions. If we do not receive such confirmation and proposals, Contec will be forced to proceed with litigation1 in order to resolve this dispute.

Dkt. 32-23 ("September 12, 2018 Letter") at 1, 4. Contec states that on September 19, 2018—the date of the first deadline in their letter—CTDI reached out to arrange a call between CTDI CEO Jerry Parsons and Contec CEO Hari Pillai. Dkt. No. 32-4 ("Pillai Declaration") at ¶ 23. Mr. Parsons and Mr. Pillai spoke later that day about a potential licensing agreement and agreed to speak again on Monday, September 24, 2018. Id. ¶ 24. Mr. Parsons "indicated that he would be making a counter proposal at that time." Id. In response, Mr. Pillai told Mr. Parsons that because CTDI "was willing to discuss potential licensing terms," he would "instruct Contec's lawyers to stand down and refrain from filing a patent infringement complaint." Id. ¶¶ 24–25. Mr. Parsons disputes the specifics of this call, stating that he does not recall Mr. Pillai indicating he would direct Contect's lawyers to stand down or delay filing the complaint. Dkt. No. 39-1 ("Parson Verified Statement") ¶ 5. Mr. Parsons further states that "based on the terms proposed by Mr. Pillai, it was apparent to me that terms for a licensing agreement would probably not be reached." Id. ¶ 8.

CTDI's counsel also sent Contec's counsel a letter on September 19, 2018, which stated "we remain willing to consider reasonable licensing terms and so, we encourage a continued conversation between the executives." Dkt. No. 32-24 ("September 19, 2018 Letter") at 3.

3

Further, on Friday, September 21, 2018, Parsons sent an email to Pillai stating that he "will put a proposal together" and suggested a call to discuss the following Monday, September 24, 2018. Dkt. No. 32-6 ("Parsons Email"). On that Monday, CTDI's counsel emailed Contec's counsel notice that it had filed a complaint on Friday, September 21, 2018. Dkt. 32-16 ("CTDI Counsel Email").

On February 15, 2019, the Eastern District of Pennsylvania granted Contec's motion to dismiss the Pennsylvania Action.

## III. LEGAL STANDARD

The first-filed rule dictates that when lawsuits relating to the same controversy have been filed in different courts, the first suit should ordinarily have priority and the later-filed suit should be dismissed. Oleg Cassini, Inc. v. Serta, Inc., No. 11-CV-8751, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (citing D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006)). Courts, in the exercise of their discretion to fashion an appropriate remedy in these circumstances, may also apply the first-filed rule by staying or transferring the later-filed suit instead of dismissing it. See Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (Fed. Cir. 2012).

"Exceptions [to the first-filed rule], however, are not rare, and are made when justice or expediency requires." Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995). "[A] district court may consider whether a party intended to preempt another's infringement suit" but this is "merely one factor in the analysis." Elecs. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005); Kellen Co. v. Calphalon Corp., 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999) ("Most commonly, courts have recognized an exception to the first-filed rule where the first-filed action was instituted by the defendant in the second action, and the defendant won the

race to the courthouse under questionable circumstances."). "Other factors include 'the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest.'" Id. (quoting Genentech, 998 F.2d at 938).

## IV. DISCUSSION

There is no dispute that the Pennsylvania Action was filed first. But the first-filed rule does not mean that the Eastern District of Pennsylvania must hear the case. Rather, as CTDI writes in its Reply, "[t]he first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, but also which forum should *decide* which forum is appropriate." Reply at 9–10 (quoting EMC Corp. v. Parallel Iron, LLC, 914 F. Supp. 2d 125, 129 (D. Mass. 2012) (emphasis in original); see also Daimler Chrysler Corp. v. Gen. Motors Corp., 133 F. Supp. 2d 1041, 1042 (N.D. Ohio 2001) ("[T]he most appropriate approach is for the court where a complaint is first filed to determine which case should go forward . . . the district court hearing the first-filed action should determine whether special circumstances dictate that the first action be dismissed in favor of a later-filed action.") (internal quotations omitted); Doc's Dream, LLC v. Dolores Press, Inc., 766 F. App'x 467, 472 (9th Cir. 2019) ("Dismissal under the first-to-file rule is improper if it would prejudice the plaintiff in the second-filed case from presenting its claims in either the first-filed case or a later case.").

In dismissing the Pennsylvania Action, the court held that:

> CTDI had every right, in its business and legal judgment, to break off negotiations and resort to litigation. What CTDI did not have the right to do, if it expected the Court to honor its first-filed Complaint, was to string Contec along just long enough to get the judicial drop and file this lawsuit in its own backyard. CTDI's conduct was inconsistent with the policy promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources. It would be unjust to excuse this

conduct with a rote adherence to the first-filed rule. Commc'ns Test Design, Inc. v. Contec LLC, 367 F. Supp. 3d 350, 358 (E.D. Pa. 2019). The court acknowledged that "whether a party intended to preempt another's infringement suit," is "merely one factor in the analysis." Id. (quoting Elecs. for Imaging v. Coyle, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005)). It noted that interference with ongoing negotiations can also support declining jurisdiction, and found that factor relevant because "CTDI took advantage of the fact that Contec deferred filing its complaint based on Contec's reasonable belief that licensing discussions were taking place in earnest, with the obvious hope that litigation would not be necessary." Id. at 359. The court also found the Northern District of New York to be the more convenient forum. Id.

The Eastern District of Pennsylvania made clear that the Northern District of New York is the more appropriate forum. Commc'ns Test Design, 367 F. Supp. 3d at 353. Thus, under the first-filed rule, this Court defers to the Eastern District of Pennsylvania's determination and denies CTDI's Motion.

In any event, the Court notes briefly that, were it up to this Court to determine the appropriate forum, it would have come to the same conclusion. CTDI's claims that it "did not try to 'induce' Contec to defer filing" and that CTDI did not file this action "'as a tactical measure to secure [its] preferred forum,' . . . but to obtain resolution of a dispute that a year of discussions had to failed to achieve" are implausible at best. Reply at 6, 9 (quoting Response at 21). While CTDI nitpicks the details of the September 19, 2018 phone call between Parsons and Pillai, it barely attempts to explain the September 21, 2018 email from Parsons to Pillai in which Parsons stated he would "put a proposal together" by Monday, September 24. The Court is unable to see how an email from CTDI's CEO suggesting that a proposal was on the way—and which was

6

written the *same day* that CTDI filed the Pennsylvania Action—could be anything other than a delay tactic to ensure the Pennsylvania Action was filed first.² See, e.g., Elbex Video, Ltd. v. Tecton, Ltd., No. 00-CV-673, 2000 WL 1708189, at *3 (S.D.N.Y. Nov. 15, 2000) (declining to dismiss later filed case because, before filing suit, the alleged infringer "not only . . . express[ed] an interest in an amicable outcome, but [] led [the other party] to believe this was possible").

CTDI also offers no plausible explanation for how the September 19, 2018 Letter from CTDI's counsel was anything other than a delay tactic. CTDI states only that "CTDI's counsel wrote Contec's counsel later that day and expressed CTDI's willingness 'to consider reasonable licensing terms,' but the terms proposed by Contec were not reasonable." Reply at 7 (quoting September 19, 2018 Letter at 2). But the letter says nothing of Contec's terms being unreasonable. Rather, it states "this is to express once again, that CTDI will consider potential terms as requested in your most recent letter," that it was agreed that Parsons and Pillai "would have a further conversation next Monday," and that "we remain willing to consider reasonable licensing terms and so, we encourage a continued conversation between the executives." September 19, 2018 Letter at 2–3. Further, the letter directly suggests negotiations in the coming weeks: "[i]f needed, I am available to discuss the terms. Please note that I will be traveling in Europe on business from September 22ⁿᵈ through October 6ᵗʰ. I will be fully connected during this time and ask that you communicate with me by email to ensure prompt responses." Id. at 3. See Elbex Video, 2000 WL 1708189, at *3 (noting, in declining to dismiss later filed case, that

---

² In its Reply, CTDI does acknowledge Parsons' email offering the proposal and states of that email: "Mr. Parsons also stated, however, 'I am not interested in a per unit cost,' a licensing term demanded by Contec." Reply at 7 (quoting Parsons Email). In citing this, CTDI appears to be attempting to inject some ambiguity about the compatibility of the parties' positions that day. But even if the parties were at an impasse on this term, the mention of a specific term along with the promise of a proposal suggests on ongoing negotiations, not an impending lawsuit.

"[m]oreover, only two days before filing the California Complaint, [the alleged infringer] indicated its availability for a conference call over the next *two weeks*") (emphasis in original).

The convenience factors do not change this analysis. While CTDI notes that "[i]n patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed," Reply at 10 (quoting Millennium, L.P. v. Hyland Software, Inc., No. 03-CV-3900, 2003 WL 22928644, at *5 (S.D.N.Y. Dec. 10, 2003), Contec counters that it was founded and is headquartered in Schenectady, NY, and that the "Contec systems that are the subject of the Asserted Patents were designed at [sic] developed at Contec's Schenectady facilities." Pillai Decl. ¶ 11. Further, "at least five of the six inventors would be available for a trial in this District, but only two (the parties' current employees) would be available for a trial in the Pennsylvania Action." Reply at 28. Thus, the Court agrees that there are "sound reason[s] that would make it unjust or inefficient to continue the first-filed action." Genentech, 998 F.2d at 938.

The Court also notes that CTDI has appealed the dismissal of the Pennsylvania Action. See Commc'ns Test Design, 367 F. Supp. 3d at 358 appeal filed, Dkt. No. 19-1672, (Fed. Cir. 2019). While CTDI argued that the action should be stayed "to allow the court in the Pennsylvania Action to decide any challenges to venue," Mem. in Support at 11; see Reply at 9–10, it does not make any direct argument why this action should be stayed pending appeal, and has not supplemented its arguments since the Pennsylvania Action was dismissed. The Court sees no reason to stay the action pending appeal on its own accord. See Zyme Sols., Inc. v. InfoNow Corp., No. C 13-4082, 2013 WL 6699997, at *5 (N.D. Cal. Dec. 19, 2013) (declining to stay later-filed action where first-filed action was pending appeal after dismissed by another

district court, noting that "if the Federal Circuit reverses the [other district's] dismissal . . . those issues can be resolved through transfer or some other appropriate procedure").

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss, Stay, or Transfer (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

DATED:  September27, 2019
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge